17-16. Mr. Engelhardt, let's wait just a couple of minutes, just a little bit, until we settle down a little. Okay, I believe we're ready. And you're reserving five minutes of your 15 minutes for rebuttal, correct? Yes, Your Honor. Okay, you may proceed. Thank you. May it please the Court, David Engelhardt for the appellants. We're appealing a premature dismissal of an appellant's first amended complaint on defenses that the government never raised, that the trial court raised sua sponte, without ever having us brief them in advance, or even known that they were coming. And that dismissal was followed by a very swift entry of final judgment, which the trial court erroneously held, raised the bar for leave to amend under Rule 15, and that was among the reasons why our second amended complaint, as proposed, was rejected. And so we are here today on errors in the rejection of both complaints. And frankly, there have been errors in simply acknowledging what the claims written in the two complaints are. Since the beginning of the case, in both complaints at issue, appellants alleged breach of express contract, remedies by implied contract terms, and quantum merit, all in the alternative. Now having read the first amended complaint, the agency did not object to the sufficiency of the pleading. They did not raise a Rule 12b-6 motion. They moved only for dismissal under the Contract Disputes Act for lack of exhaustion of administrative remedies. The trial court did not rule on that basis, and it raised 12b-6 and jurisdictional defenses on its own. And the trial court's jurisdictional defense was essentially equivalent to a 12b-6 analysis. So that was all the trial court acting sua sponte. And in fact, everything we need to have survived the trial court's sua sponte defenses is summarized in the first paragraph of the trial court's first opinion at issue today. The trial court there explained, quite accurately, that appellants provided personal services to the Board of Broadcasting Governors under contracts that scoped and paid only for independent contracting for non-personal services. Now there's a lot more detail that we allege with respect to our claims, but if we stopped right here on the words of the trial court, we allege, and the trial court saw, but ultimately didn't rule upon, legally sufficient claims for uncompensated, out-of-scope work in breach of express contract. Now we further showed that the acquisition of personal services by contract, which the Board acknowledged happened in its own opinion, that acquisition was prohibited and unlawful and therefore opened the door to the implied remedies in quantum merrily claim. Why was it unlawful? Because there is a regulation in the Federal Acquisition Regulations that says agencies shall not issue contracts for personal services except within a numerical limit set by Congress. And there was 60. There's a numerical limit of 60. Numerical limit of 60. Why isn't... How many clients are you representing? How many individuals? We represent four individuals in this case and another 200 or so will join the class as it stands today. You're at court with four? With four. And how do you know those four are not within the 60? Well, I know first because the government has never so contended. And I know second because the contracts say on their face, this is a contract for non-personal services. But that was one of the court's findings. If you had no evidence that showed that your four should not be within the 60. We're here on a threshold motion on the pleadings. The trial court engaged in premature fact-finding when it made that case. If the government wishes to show that it is A, legally allowed and B, factually capable of reaching into the pot of 616 contracts that were denominated for non-personal services but under which they acquire personal services. They think they can reach in that pot of 616 and pull out our four and fit them into the pot of 616 contracts that are left under their authorization. That's your job, not the court's job. I submit it's the government's job as the defendant to raise that defense and to make that defense. But you'd have to plausibly allege. We are more than plausibly there, Your Honor. If you look at the odds, out of the 616 contracts. Is that 616 contracts or 616 employees or contractors? 616 contractors at all given times. But is that 616 people? 616 people. You're not talking, I mean, I understood that some of these individuals had multiple contracts. Over the years. Right. One at a time. Right. Okay. So the total number of contracts is in excess of 616? Oh, it's in the thousands. All right. All right. Okay. There have been 660 providers of personal service to the Broadcasting Board of Governors each year for the last 16 years, roughly. Now the turnover has been not constant. Most of these people have annual contracts running back to back. Now if we look at the trial court's analysis of the unused authorization, the 16, that only covers 16 out of 616. Okay. 60 were authorized. They used 40. They've got a gap of 16. 616 people, which takes us from 44 up to 616, were providing personal services under contracts that were scoped for non-personal services and that the government didn't try to fit within its authorization. At most, one 38th of the 616 can be fitted into the 16. The odds against the government making that showing are 38 to 1. This is a civil case. We're bound to a preponderance of the evidence standard. We only have to get to 51%. I'm at 38 out of 39. That's about 97, 98%. I think we pleaded pretty well. And if that's the defense on which we lose, that's an error of law because we haven't established much more than a preponderance of evidence. We've got them 38 to 1. If they think they can make the factual showing that these really were among the 16 unused authorized contracts, they can try to do it. But the contracts on their face say they can't make that showing because the contracts on their face say this is not one of the authorized contracts. If it were one of those, it would have said this is a personal services contract. These contracts say you will not provide personal services and you are an independent contractor. And by the way, both of those provisions were breached. And when the trial court found lack of pleading of breach of express contract, he missed those with others. Now, as I understand it, your position is that the breach came because the government exercised various powers that go beyond the powers that it was entitled to exercise with respect to independent contractors, particularly and specifically undue supervision. Let's call it that. That is absolutely correct. And yet your damages seem to be your argument that they really should have been paid as if they had been employees. Why is it not the case that your damages are attributable to any loss that you suffered by virtue of the additional supervision that you had to endure? Well, there are different ways to measure the damage. And again, I believe it's premature. I'm asking you, why is your way of measuring it the right way to measure? In fact, it's the government's way. The figure we use, $20,000 to $30,000 per contractor per year of service, is their estimate. Well, it's their estimate of how much more that you would have been paid, that your employees would have been paid if they had been actual government employees. But my question is, why is that the correct measure of damages as opposed to whatever loss they suffered by virtue of their having this additional supervision? Your Honor, I cannot rule out the possibility that on the law when we get there, that will be the analysis of damages. We do know that they provided a service that was more valuable and a service for which they would have charged more if they knew going into the contract that that's what they were going to do. You could look at their loss as the lost opportunity to earn what an employee learns. Except that they presumably, because the agency wasn't hiring them as employees, the agency had decided that is not the course it wanted to follow. I mean, I suppose your answer is that if the agency had been told it couldn't follow the course of doing contractors, they would have opted to hire them as employees, but we don't know that. Well, that is correct. But they could have pursued opportunities elsewhere in the world of employment. The bargain they made here was a quid pro quo, and the quid pro quo is stated in the contracts. We cited three specific pages in the briefs, in the record, actually, I'm sorry, it's appendix 907, paragraph 12. There is an express quid pro quo as between the provision of non-personal services as an independent contractor and the reduction in pay. The contract on page appendix 907 says, you will not be subjected to direct supervision. You will not provide personal services. You will not be supervised in the manner or method of performance. Accordingly, you will not get benefits. I'm sorry, what page again of the appendix? 907 of the appendix. All right, I'm looking at 907. That's part of the complaint. Is that what you're referring to? I'm sorry, that's the complaint where we allege it. The quid pro quo is expressly stated at appendix 1044, 1215, and 1870 to 71. That's a selection from individual contracts representing three of the four. So looking at page 1044, what language are you relying on? There are two pieces of language. They follow one another. One, in one place it says, excuse Brad. In one place it says, the following limits apply to your scope of service. Then it says, accordingly, you will not be entitled to the following types of compensation. And that is a quid pro quo of limited service. And that scope of limited service was breached in exchange for lesser pay. Now, in the very middle of 1044. Just a quick reminder, you're into your rebuttal time. Let me, having pointed that page out to you and the two others, which are quid pro quo of limited service for limited pay. There's another measure of damage that would be applicable to the alternative claims. Which are for quantum merit, if these contracts are voided in their entirety. Or for pay by implied terms, if only the payment terms are replaced. For those propositions, we cited the AT&T case and the Barrett line of cases, among others. Those cases, Barrett holds that when under the FAR a payment term is prohibited, that payment term falls away and a fair market value is provided under an implied term. AT&T says, holds, that when the issuance of a contract has violated, a regulation or statute with a public policy that is sufficient to support avoidance, the contract is avoided in its entirety. AT&T says that when a statute or regulation has been contravened, which is what you're saying, that the statute was contravened, that that does not necessarily result in the invalidation of the contract. It does not necessarily. You have to look at the public. You're using that to say that it does result in an invalidation of the contract. I am saying that AT&T sets up a test for invalidation, that the plaintiff there failed to satisfy, but that we do satisfy. Do you see what I'm saying? I think AT&T works against your argument. I read it, Your Honor, as setting up a test. We will invalidate a contract if you meet this test. The test is the public policy of the violated statute. The plaintiff contractor in AT&T was faced with a statute that had legislative history that foreswore the remedy of invalidation. The AT&T court relied heavily on that in finding we're not going to invalidate this contract. The Senate committee records at least one statement to the effect that we don't want a violation of this statute to lead the litigation over validity. Another bad fact that the AT&T plaintiff had that we do not have is that the statute itself was not intended to protect the plaintiff contractor. The violated regulation here was most definitely intended to protect providers of personal services. When that regulation says you shall not acquire personal services by contract, it's forcing the government to hire providers of personal services as employees, if not within an authorized use of personal service contracts, which pay more. That regulation forces them to hire these contractors if they want their personal services and therefore pay them more. That's the logic of the statute. The subsection above the prohibition says hiring providers of personal service on contracts circumvents the civil service laws. The next section says, except as authorized, you shall not do it. They were supposed to hire us under the civil service laws, which include the laws for higher rates of pay. Could I ask just a quick question? Because I think you're running out of time. But besides excess supervision, is your complaint about the way your employees or your contractors were required to do their work? In addition to excess supervision, which is the only alleged breach that the trial court grappled with or that the government argued about. There were two provisions. To cut to the chase, I think I saw two things that were mentioned in the course of the briefing. One is government equipment and two is location of services. Those are actually... Are those the only other things that you're pointing to? Those, no, not at all. What else? We're not pointing to them, period. What do you point to? The government points to them. I understand, but what do you point to? Working like employees and not as independent contractors. But that's just a generalization. What is it exactly besides supervision we've already covered? What is it besides supervision that you're complaining about? Doing the same work that the federal employees are doing. Working exactly like a federal employee, which is not allowed in the law. What does that mean in practical sense? If they weren't being supervised, but they were asked to perform, as contractors, the same services, what does that violate? It violates the contract. Why? Because the contract says specifically, you're going to have to do this kind of work and this is how you're going to be paid. So how would that violate the contract? The contract says, again, you will be an independent contractor. That term has a meaning. It's a legal meaning. The most important feature of that is the degree of supervision. It's whether you're operating on your own or you're operating under the close supervision of your employer. What I'm trying to get from you is what else besides supervision is there? In the FAR, the same regulation, subsection D, independent contractors shall not do the work of federal employees. They shall not do the same kinds of tasks and they will not work on integral government missions. Those are the two breaches beyond the obvious that we've discussed. Okay. All right. So you're well out of time, but we're going to restore you a little bit of rebuttal time, okay? Thank you. Okay. Let's hear from the government. Counselor Stern? May I please report? The Court of Federal Claims dismissed this complaint for lack of jurisdiction and failure to state a claim for relief and went through a very thorough analysis of each aspect of the jurisdictional and then the failure to state a claim. I think maybe it would be most helpful just to walk it through in a similar way. In terms of jurisdictional ruling, the court found that plaintiffs claimed a breach of implied in fact contract did not create jurisdiction. Can you start with the express contract since that's what we were just discussing? Okay. The court found that the plaintiffs failed to state a claim for relief with respect to their claimed breach of express contract. The express contracts, the court looked at the language of the express contracts. The express contracts specifically set out that the individuals were supposed to work, for example, at specific locations, use government equipment, and be answerable to contracting officers or representatives of contracting officers in terms of their performance of work. And the court further found that the only allegations that the appellants have raised were very, very generalized claims that they were subject to supervision, which was not significantly different than the requirements of the contract that they be answerable to the government for the performance of the work as any contractor is answerable to the government. Many of the allegations, in fact, in the complaint, are not even allegations that these plaintiffs performed work under pervasive and extensive supervision. That would be in contradiction to the express terms of the contract. They were simply references to the inspector general's report that addressed the sampling of contracts that the inspector general had looked at, but not specifically made findings with respect to these plaintiffs' contracts. So all in the end, all the court really had to look at in terms of the allegations in the complaint were a very few, very general allegations that the appellants were subject to supervision, and the court found that that was not a plausible allegation of breach of contract when the contracts themselves did require that the individuals be answerable in terms of the performance of their work. The allegations didn't go into being supervised in terms of the specific performance or the manner of the work or any specific details that are just generally alleged that were subject to supervision. In addition, to make a plausible claim for a breach of the express contract, one of the elements of a breach of contract claim would be damages due to the breach. But as I think perhaps Judge Bryson's questions were getting to this in a way, the prayer for relief here does not in any way tie damages to this alleged breach of excessive supervision. Rather, it seeks to be paid back pay as if these individuals were government employees. And so in no way is that tied to the allegation. Again, we would say not even a plausible allegation of breach of this supervision, which is in the contract. So for that reason, the court found that there was not a plausible claim of breach of the express contract. The court also found that there was no jurisdiction of the implied in fact contract because it's established law that you can't have an implied in fact contract when there is already an express contract covering the same subject matter. Here, the appellants, again, the only real allegation seems to be that they were subject to increased supervision of what the contract required. That doesn't take the whole subject matter to an entirely different matter other than what's covered in the express contract. Let me return for a moment to the express contract issue. Yes, sir. Suppose that you have an, I keep saying employee, which of course loads the dice, but suppose you have an individual who has been engaged by contract to do certain services with provisions such as there are in the record in this case saying that the individual will be paid X amount but will not be subject to direct supervision in that individual's conduct of the work. And it turns out that there is in fact something that everyone would agree is direct supervision. It's hovering type supervision. And what is the remedy that the contractor has in that setting? None, just to file a complaint, or what? You're in that position, I'd say. Where do you go to get relief? Is it just you claim breach and walk away? What do you do? Well, there would have to be some claim of money damages.  Well, never mind. I'm asking the question more broadly than that. Where do you go? Is there a place that you could go with that complaint on the basis of what looks like a breach of the contract? Well, I'm not aware of a court that they could go to to address that absent some money claim tied to that breach. So clearly the court of federal claims exists to entertain contract damages. Assume for a minute there is money tied. Maybe it's travel costs or something like that. Traffic to travel to wherever it is the government has required them to travel to. So then what is the answer? Does that change your answer? My answer changes if there is a plausible claim of breach of contract, which I think perhaps Judge Rice's hypothetical is assuming that there is a plausible claim of breach of contract and money damages tied. Then yes, of course, the court of federal claims is the place to bring a breach of contract claim with money, a plausible breach of contract claim with money damages tied. That's not what the trial court found in this case. And I think that that ruling was correct. Because when you look at the complaint, the allegations, which again, they're very few, because when you look, I know in the appellant's reply brief, I think it was a reply brief, they sort of set out a laundry list of places where they say that they allege that there was this excessive supervision. But when each of those sites are checked, the vast majority of them, in fact, are sites to the inspector general report, which was sort of making generalized findings based on a sampling of contracts at the board, not findings about these specific appellant's contracts. So there end up being only maybe two or three very generalized allegations that say we were subject to supervision. And again, that does not seem to plausibly present a breach when the express contracts themselves say, you're going to be performing this work. You're going to be answerable to the government to make sure that it's performed correctly and in accordance with the government's requirements. And there's going to be a contracting officer or contracting officer's representatives checking that work. Would retirement benefits translate into money damages of any kind here? I'm assuming that the persons providing the personal services under the PSC contracts do get federal retirement benefits. They don't, Your Honor. And that was another criticism by the lower court. The lower court said even if we construe these as personal services contracts and we construe appellant's claim to be a claim of a breach of an implied contract, meaning essential terms were omitted from the personal services contract, the court went on to find that the appellant's complaint failed to state a claim in that regard because they had in fact not identified any essential terms. Only employees are entitled to, an employee of the federal government. Yes, Your Honor. And that's the reason why the laundry list in the complaint of benefits that the appellants are seeking, 90% of them have Title V in front of them. Title V are benefits that are entitled. When did this issue come to light when the OIG issued its report? I'm sorry, when? When did this whole issue come to light? Yes, it appears that the Inspector General's report was basically the catalyst for this lawsuit. The OIG found, yes, that there were some contracting deficiencies and errors at the BBG, and they were addressing them, and there was a back and forth between the Inspector General's office and the board. The board agreed to change some practices, change the way they did business in other ways. Has there been a finding of any kind by any tribunal or agency proceeding that the board was acting illegally, that this was an illegal action? The Inspector General opined that the board was going beyond the 60 personal services contracts.  The whole area of when something is or isn't a personal services contract is a fairly murky area, even under the FAR and even under some statements by GSA to that effect, that this is a really murky area. The board disagreed. There certainly was no finding that these particular individuals were operating under a personal services contract. As the lower court says, even if they were, it still does not give rise to any breach of contract claim on the part of these individuals, because, as I was just saying, if it's a breach of a personal services contract, there are no essential terms that have been identified by these individuals. If they also made the claim that it's a breach of, well, they made a quantum merit claim, which is basically a breach of an implied in-law contract, the court said, not only are those generally disfavored, but there's no evidence in this case that these contracts should be determined void. And that's where the AT&T case comes into play. And Judge Rayne, I believe you correctly stated that that case goes against the individuals that have brought this case. AT&T says that even if a contract is against a statute that does not create a right of private action, it does not operate to void the contract. So even if these personal services were a personal services contract and were in excess of the 16 that the agency was then authorized to engage into, it still wouldn't lead to avoiding of the contract. In addition, these individuals were individuals who benefited by the agency perhaps hypothetically going beyond the 60. So they would not be the ones to come forward and seek avoiding of the contract. They benefited in the sense that they had a form of employment that you hypothesize they wouldn't otherwise have had. I mean, because their hypothesis is the agency needed the folks, they needed the people, they needed the services. They just acquired them on the cheap and unlawfully. So you're not suggesting, are you, that the agency could easily have done without all these people and they were lucky to have any kind of work at all? No, I wouldn't suggest that, Your Honor. OK, but I didn't know where you were going by saying that they benefited from this. That seemed to be the brunt of your argument. They benefited by having work. Right, but the point is that the agency thought it needed these people, and if it were told conclusively that it could not have them on the basis that it got them, the hypothesis is that it would have then ponied up for more money and gotten their services at a rate and under conditions that were more favorable to them. And that will forever remain a hypothesis, Your Honor. There's certainly no evidence in the record. The agency only gets funding for X number of actual civil service positions. So if it couldn't contract for the employment, then it would have to go without the employees' work. So in that sense, these were the individuals who benefit by at least getting an employment contract. And we can call it employment, because there's employment by appointment most often, but sometimes also by contract. And whether it's something as employment, it's not really that important to this case. And it may be an employee relationship for certain purposes, like some cases it held for Title VII purposes. Even a purchase order vendor may perhaps be an employee. You mean it's not like a wage and hour case? It's not like a wage and hour case. That's correct. We're talking about whether somebody is a contract and a sharp line between employee and contract. You're saying contractors can be employees, in effect, but they're not appointed under the civil service laws. I read inferences of unjust enrichment in the petition here, in the appeal. Did the employees provide services to the government that were beyond those required by their contracts? They did not, Your Honor, and there's no allegation to that effect. As I think came out, perhaps, during Judge Bryson's questioning of Collins Counsel, the only claim that they're making is regarding supervision. There is no claim that they provided services that were not covered by the contract or beyond the scope of the contract. Okay. Thank you. Thank you, Your Honor. All right, Mr. O'Hara. I'll put you back to three minutes. Thank you, Your Honor. Let me start with one of the questions the court asked when I was last up here. Actually, I'm sorry, you asked the counsel this. Where do they go? Under the Tucker Act, you go where we went if you want relief for the damages we suffered. We were dismissed for lack of jurisdiction because the court did not find a non-frivolous claim erroneously. But we were not dismissed because we went to the wrong forum. We belonged in the Court of Federal Claims, and we belong there now. We were dismissed prematurely. Going to Your Honor's question about damages, I don't know the amount yet. But no matter what theory we proceed upon, all we need to prove today is that the claims are facially valid, as pleaded, and damages can be determined later. I believe that that is premature. I understand your concern that damages may not be as much as we have demanded, may not be as much as they estimated if they were to have hired these people. Well, the damages issued, it's not important in terms of quantity. It's important in order to determine whether your allegations are stating a supported claim for relief. There has to be harm. If there's no damages that arise out of the supervision issue, have you actually made a proper allegation for a claim of relief? We've pleaded damages in an amount to be determined. We've cited their estimates of what the contractor should have been earning in excess of what they did. Damages upon what theory? The supervision? Excess supervision? Supervision and providing service above and beyond what was required. They were not supposed to work as federal employees, and they did. They were not supposed to be working on integral government missions, and they did. They would have charged more for that. If they had shown up to sweep the floor and were told to go into surgery, perform brain surgery, they'd be entitled to more money. Where is that pled? I'm just illustrating a point. They did something above and beyond, and that is pled everywhere. They did something above and beyond what they were hired to do. Besides the excessive supervision, where is it pled that there was something above and beyond what they were required to do? For example, in the amended complaint. We allege work... Can you give me a specific page in sight? There are many. As I was going through the various breaches... For example, I'm looking at the breach of express contract is at page A906. That's in the amended complaint, or you could look at the original complaint. Yes. The one you want to look at. The list of breaches that I read out earlier comes with... You're interested in the second amended complaint, Your Honor? Either one. Working like employees, appendix 68 to 70, 79, 81 to 83, 90... Slow down a little. Yeah, I'm sorry. Go ahead. Give me those again. I'm sorry. You started at 68, I think. Yes, 68 to 70. 79. Okay. 81 to 83. Okay. 90. 98. 100. 875 to 877. 882 to 883. By the way, these are all in the briefs. 886 to 888. 896. And 897 to 898. I would also like to add that... And by the way, for each of the next several breaches that we discussed earlier, there's another list of page sites, often overlapping. I would also like to add that other fact-finders, including the Inspector General, the IRS, on an appeal brought by Appellant Peach, who's here today, and the U.S. District Court have found that individual contractors have worked in the manner of employees and were directly supervised. Each of our appellants alleged, as to him or her own self, every fact relied upon by those authorities to find the provision of personal services like an employee. Having gone through with them the prior findings, they affirmed to us, and we did plead, that they served in the manner described by the Inspector General upon finding that it was an illegality, it was a violation of a prohibition. They affirmed to us, and we pleaded, what the IRS relied upon in finding that Appellant Peach was here and was found by the IRS to have worked like an employee. They pleaded that for themselves. So let's assume that the board was allowed to enter into unlimited contracts of this nature. Would you still have a case? In that case, we'd have completely different contracts. They'd have different scopes. No, let's say you have the same contract, except there's no limit to which the board can issue. No, because the scope would still be what it is, and it would still be breached. The scope says, you shall not work like an employee, you shall not be supervised by a federal employee, you shall not do all the things we've been discussing. The contracts say that. Call them authorized or not, they still say it, and it's still a breach. But you wouldn't have an argument as to supervision at that point. Pardon? You wouldn't have an argument on supervision. We would, because the contracts say you won't be supervised. You can recharacterize them and say they were within the authorization, but they still say what they say. These contracts are not merely unauthorized. They are written completely differently, probably to mask the violation, which became known over time, the violation of the prohibition. They are written differently. These are not the same contracts by their terms, some of which were authorized and some of which were not. These are different contracts, and they've taken that position themselves. In fact, they have defended on the basis that the contracts say you won't do this and you won't do that. Can you conclude, please? Yes. I just want to go briefly back to the question of avoiding the contracts, because their damages are not going to be the problem. The law is well developed on implied remedies for fair market value or quantum merit, whatever the value to them must be. And I want to just touch upon, before stopping, something that my colleague said about needing these people to do the work. All throughout the Inspector General's report, they cited their need for the work, and they said their need to treat them the way they were treating them. The problem is the way they were treating them was unlawful because it converted them into personal service providers. When they state their need for the help, what they're really saying is we needed personal service providers. We had to have them come to the building on a schedule, do what we tell them. That's illegal if it's done on a contract in excess of four years. I think we have your argument, sir. Thank you very much. Thank you.